ROXANNE KHAZARIAN,

    Plaintiff,

    v.                               No. 3:16-cv-01762 (VAB)

GERALD METALS, LLC, METALS
TRADING CORP., GERALD
HOLDINGS, LLC, CRAIG DEAN, AND
DAN GAMEZ,

    Defendants.

## RULING ON DEFENDANTS' MOTION TO DISMISS

Roxanne Khazarian ("Plaintiff") filed this lawsuit and brings numerous claims, alleging that Gerald Metals, LLC, Metals Trading Corp. ("MTC"), Gerald Holdings, LLC, Craig Dean, and Dan Gamez (together, "Defendants") discriminated against her based on her age and her sex, fraudulently misrepresented her compensation, and exceeded their authorization to access her computer and cell phone by secretly monitoring her work and personal devices. Second Am. Compl., ECF No. 50.

Defendants now move to dismiss Ms. Khazarian's claims for fraudulent misrepresentation (Count Twelve), failure to pay wages (Count Fifteen), computer fraud and abuse (Counts Sixteen, Seventeen, Eighteen, and Nineteen), invasion of privacy (Count Twenty), and defamation (Count Twenty-One). Mot. to Dismiss, ECF No. 54.

For the reasons discussed below, Defendants' motion to dismiss is **GRANTED IN PART AND DENIED IN PART.** Defendants' motion to dismiss is **GRANTED** as to Counts Fifteen and Twenty-One, and **DENIED** as to Counts Twelve, Sixteen, Seventeen, Eighteen,

Nineteen, and Twenty. In addition, the motion to dismiss Counts Sixteen, Seventeen, Eighteen, and Nineteen as to Dan Gamez in his individual capacity is **GRANTED**. Ms. Khazarian may serve an Amended Complaint within twenty-one days of this order, if she wishes to address the dismissed claims.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Factual Allegations

Gerald Metals, LLC, a commodity trading company, is a part of the Gerald Group. Second Am. Compl. ¶ 14. From January 2008 until she was fired on April 5, 2016, Ms. Khazarian, an attorney, served as Gerald Metals's General Counsel. *Id.* at ¶ 36. She had a starting salary of $260,000. *Id.* at ¶ 32.

Ms. Khazarian's starting salary allegedly resulted in "a substantial reduction" from her previous salary. *Id.* at ¶ 33. A Gerald Metals executive, Fabio Calia, allegedly "told her that her base salary would have to be lower to fit within Gerald Metals' compensation structure," but explained that the reduction would be offset by an annual bonus of 100-150 percent of her base salary.[1] *Id.* at ¶¶ 33, 75-76.

For her first six months at Gerald Metals, Ms. Khazarian worked on a trial basis; after that period, she worked as General Counsel and her salary increased to $285,000. *Id.* at ¶¶ 26, 34. She alleges that her trial period lasted twice as long as other employees' required trial periods. *Id.* at ¶ 27.

The company re-organized in 2010; Gerald Holdings, Inc., became the top company within the Gerald Group, and Ms. Khazarian became General Counsel for Gerald Holdings, Inc.

---

[1] There is some confusion about Mr. Calia's title at Gerald Metals. The Complaint describes him as the Then-Chief Operating Officer, Second Am. Compl. ¶ 33, and as the Then-Chief Financial Officer. *Id.* at ¶ 75. His exact title does not affect the Court's analysis of this Motion to Dismiss.

*Id.* at ¶¶ 18, 28. With this new title, she gained new responsibility as the Anti-Corruption Compliance Officer, but no increase in salary. *Id.* at ¶ 28. Ms. Khazarian alleges that Gerald Metals raised the salaries of similarly situated younger, male employees. *Id.* at ¶ 28.

In November 2011, Ms. Khazarian's salary increased to $305,000, allegedly only after she said that she was considering filing claims for age and sex discrimination. *Id.* at ¶ 35.

Ms. Khazarian also alleges that, on November 21, 2013, as part of her 2013 compensation, she was promised $25,000 in MTC stock. *Id.* at ¶ 152. She alleges that she was never provided further notice or information about that stock. *Id.* at ¶¶ 157-59. She alleges that, during the eight years that she worked for Defendants, her average annual bonus was $44,000, or 14.8 percent of her annual base salary. *Id.* at ¶ 77.

Gerald Metals hired Craig Dean as its Chief Executive Officer in January 2013. *Id.* at ¶ 42. Ms. Khazarian claims that, at the beginning of his tenure, Mr. Dean announced "that he wanted to lower the average age of employees by 15 years, run the company with employees in their 30's and 40's and 'marginalize' employees over 50." *Id.* at ¶ 43. Mr. Dean allegedly intended to accomplish this goal by restructuring the Legal Department in Stamford, Connecticut, and by hiring younger, male employees and freezing or reducing compensation for older and female employees. *Id.* at ¶¶ 53-57.

For about four months, starting in late 2015, Ms. Khazarian went on leave from Gerald Metals, first, to care for a terminally ill elderly parent, and then, to tend to her own health issues. *Id.* at ¶ 86. She alleges that Defendants reduced her bonus by nearly one-third, or $30,000, that year. *Id.* at ¶ 89.

In January 2016, Ms. Khazarian filed complaints with the Connecticut Commission on Human Rights and Opportunities ("CHRO"), and with the Equal Employment Opportunity

Commission ("EEOC"). [2] *Id.* at ¶¶ 6-9. She later received a release of jurisdiction from the CHRO and a notice of right to sue from the EEOC. *Id.*

Ms. Khazarian alleges that, before she returned to work from leave, and after she filed discrimination claims with the CHRO and EEOC, Mr. Dean instructed Gerald Metals's Infrastructure Team to monitor Ms. Khazarian's work and personal electronic communications. *Id.* at ¶ 91. She alleges that Dan Gamez, who worked on Gerald Metals's Infrastructure Team, began to review her digital activity on January 26, 2016, by monitoring, among other things, her Internet history, email activity, keystrokes, application activity, user activity, and file tracking. *Id.* at ¶¶ 92-93. She claims that another co-worker, who also complained of sex discrimination in this workplace, was also monitored in retaliation for complaining about age and sex discrimination at the office. *Id.* at ¶¶ 96-97. She claims that she never authorized surveillance of her work or personal devices, and that the surveillance was "willful, wanton and malicious." *Id.* at ¶¶ 105-06. She maintains that Defendants accessed confidential information, including privileged conversations with her attorney. *Id.* at ¶ 107.

After being absent from work on February 22, 2016 for two doctor's appointments, Ms. Khazarian returned and found that her office desktop and her work cell phone did not work. *Id.* at ¶ 119. She claims that her devices continued to malfunction until at least March. *Id.* at ¶¶ 120-23. She alleges that she later discovered that Defendants had used "Stingray" surveillance to track Ms. Khazarian's cell phone calls. *Id.* at ¶ 123.

Two months after Ms. Khazarian raised complaints about Mr. Dean, on March 22, 2016, he allegedly "engaged in acts of inappropriate and physically offensive and threatening behavior

---

[2] The Complaint lists both January 26, 2017, Second Am. Compl. ¶ 91, and January 26, 2016, *id.* at ¶ 92, for the date that Ms. Khazarian filed her discrimination claims with the CHRO and the EEOC. Given the rest of the facts, January 26, 2016 appears to be the correct date.

at a business dinner at the home of a Gerald Director"; Mr. Dean allegedly "loudly yelled" at Ms. Khazarian, pressured her to drink alcohol, and made her physically uncomfortable. *Id.* at ¶ 127. Specifically, Mr. Dean "brushed up against her physically rubbing the side of his body against Ms. Khazarian in a vertical motion and stating very loudly 'should we have a pre-nuptial agreement?'" *Id.* at ¶ 128.

The company placed Ms. Khazarian on administrative leave on March 26, 2016, in part because she had allegedly been working on "her 'personal court case' during work hours." *Id.* at ¶ 133. Ms. Khazarian allegedly received a suspicious e-mail in her personal e-mail account approximately forty minutes before she was placed on leave, which she claims could have come only from someone with access to the Gerald Metals systems. *Id.* at ¶ 136. The e-mail requested that Ms. Khazarian provide company documents to the sender. *Id.* at ¶ 136. She reported the e-mail to the company's Infrastructure Team Helpdesk, but never received a response. *Id.* Ms. Khazarian alleges that, "at Dean's request, Gamez arranged to have the suspicious email sent to Plaintiff's personal email with Gerald Metals' confidential documents attached to the email as a pretext to fabricate a purported basis for her termination." *Id.* at ¶ 137.

In anticipation of a meeting with Mr. Dean, on April 1, 2016, Ms. Khazarian sent him a letter declining to meet in person on April 5 because she "was concerned for her physical well-being in his presence," and, "due to the continued pattern of unlawful discrimination, harassment, retaliation, and surveillance, Gerald Metals' actions constituted constructive discharge," forcing her to resign. *Id.* at ¶ 144. Ms. Khazarian received a termination letter on April 6, 2016, that stated that she would have been terminated in person at the April 5 meeting, and that her actions had "compromise[d] [her] professional integrity as a lawyer." *Id.* at ¶¶ 145-46.

On July 18, 2016, Ms. Khazarian allegedly asked to inspect MTC's books and records, believing that she was a shareholder based on the gift of stock that she received in 2013. *Id.* at ¶¶ 152, 155. She allegedly discovered in response that: "(i) her shares had been repurchased and cancelled by MTC on April 1, 2016, and, therefore, she was no longer a shareholder (ii) and that this action was taken in accordance with the provisions of a shareholder agreement, an equity incentive plan and other referenced documents." *Id.* at ¶ 156. She also allegedly discovered that her shares had been repurchased and cancelled four days before Mr. Dean terminated her employment. *Id.*

Ms. Khazarian allegedly was never notified that her stock had been repurchased and cancelled, and she claims that when she has requested information about the stockholder agreement or related documents, MTC has refused to give her information. *Id.* at ¶ 159. She alleges that Defendants have, as a result, deprived her of wages and compensation. *Id.* at ¶ 166.

Ms. Khazarian alleges that Gerald Metals has taken intentionally discriminatory actions that have caused her "severe emotional trauma, including, but not limited to, severe anxiety, sleeplessness, breathing difficulties, crying spells, cardiac problems, shortness of breath and visual problems." *Id.* at ¶ 167.

### B.    Procedural History

Ms. Khazarian filed this case on October 25, 2016. The Complaint alleges violations of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 *et seq.* (Count One); sex discrimination under Title VII of the Civil Rights Act of 1964 (Count Two); age and sex discrimination under the Connecticut Fair Employment Practices Act (CFEPA) (Counts Three and Four); retaliation under the ADEA (Count Five); retaliation under the CFEPA (Count Six); interference and retaliation under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601

*et seq.* (Counts Seven and Eight); discipline and discrimination in violation of the Pay Equity and Fairness Act, Conn. Gen. Stat. § 31-40z (Count Nine); breach of contract (Count Ten); negligent misrepresentation (Count Eleven); fraudulent misrepresentation (Count Twelve); conversion (Count Thirteen); theft, Conn. Gen. Stat. § 52-564 (Count Fourteen); failure to pay wages under Connecticut General Statute § 31-72 (Count Fifteen); unauthorized access of a computer system under Connecticut General Statute §§ 52-570b, 53a-251, 53-451, and 53-452 (Counts Sixteen and Seventeen); unauthorized access of a computer system under the Federal Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030, and the Stored Communications Act (SCA), 18 U.S.C. § 2701 *et seq.* (Counts Eighteen and Nineteen); invasion of privacy (Count Twenty); and defamation per se (Count Twenty-One). Second Am. Compl. ¶¶ 168-275.

Before filing in this Court, Ms. Khazarian exhausted her administrative remedies. She filed claims with the CHRO and the EEOC, and received a release of jurisdiction from the CHRO on July 29, 2016, and a notice of right to sue from the EEOC on October 18, 2016. *Id.* at ¶ 6. This Court has jurisdiction because the Complaint raises a federal question, 28 U.S.C. § 1332, and the Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

On August 4, 2017, Defendants moved to dismiss eight counts of the Complaint. Those counts are: fraudulent misrepresentation (Count Twelve), failure to pay wages (Count Fifteen), Connecticut computer crimes (Counts Sixteen and Seventeen), federal computer crimes (Counts Eighteen and Nineteen), invasion of privacy (Count Twenty), and  defamation per se (Count Twenty-One).

## II. STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The court must read the complaint liberally, and will only grant a motion to dismiss if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *see also Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005) ("*All* complaints must be read liberally; dismissal on the pleadings *never* is warranted unless the plaintiff's allegations are doomed to fail under any available legal theory.").

The plaintiff's allegations need not be detailed, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In evaluating whether a complaint will survive a motion to dismiss, the court will take "all of the factual allegations in the complaint as true," but will not accept legal conclusions pleaded as factual allegations. *Iqbal*, 556 U.S. at 678. The court will also view the factual allegations in the light most favorable to the plaintiff. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013).

This case also involves a claim of fraudulent misrepresentation in Count Twelve. As a result, the heightened pleading standard of Rule 9(b) applies to the allegations related to that Count. Under that Rule, the plaintiff must state "the circumstances constituting fraud . . . with particularity." Fed. R. Civ. P. 9(b). That is, the plaintiff must "'specify the time, place, speaker, and content of the alleged misrepresentations,' 'explain how the misrepresentations were fraudulent and plead those events which give rise to a strong inference that the defendant[] had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth.'" *Cohen*, 711

F.3d at 359 (quoting *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 191 (2d Cir. 2001)). "The requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1128 (2d Cir. 1994).

Rule 9(b) also states that although fraud must be pled with particularity, the "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R. Civ. P. 9(b); *Wight v. BankAmerica Corp.,* 219 F.3d 79, 91 (2d Cir. 2000) ("while the 'actual . . . fraud alleged must be stated with particularly . . . the requisite intent of the alleged [perpetrator of the fraud] need not be alleged with great specificity.'" (quoting *Chill v. General Elec. Co.,* 101 F.3d 263, 267 (2d Cir. 1996)).

## III.    DISCUSSION

### A.    Fraudulent misrepresentation against Gerald Metals, LLC and Metals Trading Corp. (Count Twelve).

Ms. Khazarian alleges that Defendants made two related fraudulent statements. First, she alleges that Gerald Metals fraudulently told her on November 21, 2013, that she had been granted $25,000 in stock in Metals Trading Corporation. Second Am. Compl. ¶ 152; Opp. to Mot. to Dismiss 17, ECF No. 61. Second, Ms. Khazarian alleges that, on July 29, 2016, Gary Lerner, acting on behalf of Gerald Metals, fraudulently told her that her shares had been repurchased and cancelled on April 1, 2016. Second Am. Compl. ¶¶ 152, 154, 156; Opp. to Mot. to Dismiss 17.

Ms. Khazarian claims that she was never granted the stocks, and that the stock therefore was also never cancelled. Second Am. Compl. ¶¶ 156-61; Opp. to Mot. to Dismiss 17. She points out that she was never provided with notice, voting rights, dividends, or other standard

shareholder rights. Second Am. Compl. ¶¶ 156-61; Opp. to Mot. to Dismiss 17. She alleges that the two statements were "untrue and known to be untrue by Gerald Metals," and that the promise of the stock was intended to induce Ms. Khazarian to continue to work for Gerald Metals, which Ms. Khazarian did, to her detriment. Second Am. Compl. ¶ 215.

Defendants, on the other hand, argue that these allegations fail to meet the heightened pleading standard of Rule 9(b). Mot. to Dismiss 6. Defendants argue that the Complaint lacks a particular allegation of a misrepresentation because it fails to identify "who granted the stock, what was actually said or otherwise communicated with regard to the stock, the circumstances surrounding the granting of the stock, or that Gerald Metals and/or Metals Trading Corp. knew or should have known of any fraudulent misrepresentation." *Id.* (citing *Cohen*, 711 F.3d at 359). At oral argument, Defendants suggested that, at most, Ms. Khazarian's allegations support negligent misrepresentation—not that Defendants intended to defraud her.

In determining whether a plaintiff has pled with sufficient particularity under Rule 9(b), the Court assumes that the plaintiff's allegations are true, *O'Brien v. Nat'l Property Analyst Partners*, 936 F.2d 674, 676-77 (2d Cir. 1991), and views the alleged facts in total, not in isolation, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007). Ms. Khazarian has alleged that representatives from Gerald Metals twice told her about the status of stock that she ostensibly owned for several years; she now suspects that those two representations were fraudulent because she never received official documentation of her accounts, the stock was cancelled and sold four days before she was fired, and she was never given an opportunity to exercise rights as a shareholder. Second Am. Compl. ¶¶ 152-56.

Ms. Khazarian has identified a speaker by alleging that representatives from Gerald Metals told her about this stock. *See Loreley Financing (Jersey) No. 3 Ltd. V. Wells Fargo*

*Securities, LLC*, 797 F.3d 160, 171-72 (2d Cir. 2015) (finding that the plaintiff's allegations that three Wachovia entities acted together to structure and offer fraudulent securities was sufficient to "'inform each defendant of the nature of [its] alleged participation in the fraud.'" (quoting *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987)). She also specified that the statements were made on specific dates, in conversations about her remuneration for 2013 and after her firing. Second Am. Compl. ¶¶ 152, 154, 156. By alleging particular statements that led her to believe that she was entitled to property that she was allegedly never granted, Ms. Khazarian has pleaded sufficiently specific facts to satisfy the heightened requirements of Rule 9(b). *See Cohen*, 711 F.3d at 359 (holding that a plaintiff must specify "time, place, speaker, and content of the alleged misrepresentations" for sufficient Rule 9(b) pleading (internal quotation marks omitted)).

Unlike the specificity requirements of alleging the time, place, speaker, and content of alleged misrepresentations, Rule 9(b) permits a plaintiff to allege the defendant's state of mind more generally. Fed. R. Civ. P. 9(b); *see Shields*, 25 F.3d at 1128 (holding that the plaintiff may plead defendant's state of mind by averring generally "facts to show that defendants had both motive and opportunity to commit fraud"). Here, Ms. Khazarian has alleged motive and opportunity by alleging that Defendants' actions were "willful and intentional," and that Defendants intended to persuade Ms. Khazarian to work for Defendants for a lower salary than she might earn elsewhere. Second Am. Compl. ¶¶ 35, 167.

Defendants argue that, like the defendants in *Cohen*, they did not know when they spoke that their statements were untrue. 711 F.3d at 359. In *Cohen*, the plaintiff sued her ex-husband over representations that he made during their divorce. *Id.* at 356. Relevant to this case is one alleged misrepresentation: in 1986, the defendant had told the plaintiff that the entire value of a

real estate investment had been lost. *Id.* at 356-57. That was true as far as the defendant knew at the time, but, within a year, nearly two-thirds of the investment had been returned. *Id.* at 357. The plaintiff alleged that the defendant had defrauded her by representing that the entire value of a real estate investment had been lost, but the court dismissed the count because the plaintiff had failed to allege that the defendant "knew or had reason to know at the time that [a third party] would repay approximately 63% of the investment months later in 1987." *Id.* at 359.

This case, taking the facts in the light most favorable to Ms. Khazarian, is different from *Cohen*. The Complaint alleges that Defendants defrauded Ms. Khazarian first by telling her that she owned stock in MTC, while never intending to purchase stock on her behalf, and second by falsely telling her that the stock had been repurchased and sold. Second Am. Compl. ¶ 152. Those pleadings allege with sufficient particularity that Defendants defrauded Ms. Khazarian.

Therefore, Defendants' motion to dismiss Count Twelve is denied.

**B. Failure to pay wages against Gerald Metals, LLC and Craig F. Dean (Count Fifteen).**

Ms. Khazarian alleges that she was promised $25,000 in MTC stock as a non-discretionary bonus as part of her compensation for 2013. Second Am. Compl. ¶ 152. She brings Count Fifteen as a civil action to collect wages under Connecticut General Statute § 31-72. *Id.* at ¶¶ 228-36. Defendants argue that Ms. Khazarian has no cause of action under this statute because her bonus was discretionary, and therefore is not a wage. Mot. to Dismiss 7-8. Defendants argue that they granted Ms. Khazarian stock, as promised, and lawfully cancelled it when she was terminated. *Id.* at 8.

Connecticut law defines "wages" as "compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission, or other basis of calculation." Conn. Gen. Stat. § 31-71a. The Connecticut Supreme Court has noted that this

language is ambiguous: "[a] bonus, even if discretionary or not specifically tied to identifiable extra work performed by an employee, could be considered 'compensation for labor or services rendered' by that employee; it similarly is reasonable to read that language as linked expressly to identifiable extra work or services performed by a particular employee." *Weems v. Citigroup, Inc.*, 289 Conn. 769, 779 (2008). The court concluded that, where bonuses were tied to "subjective factors . . . not entirely predictable or within the control of the specific employee," bonuses are not wages under § 31-71a(3). *Weems*, 289 Conn. at 357; *see also Ziotas v. Reardon Law Firm, P.C.*, 296 Conn. 579, 589 (2010) (finding a bonus is not a wage where payment of a bonus was contractually required, but the amount of the bonus was discretionary); *Association Resources, Inc. v. Wall*, 298 Conn. 145, 173 (2010) (finding a bonus is a wage where payment of the bonus was contractually required and amount of the bonus was not discretionary).

Relying on Connecticut Supreme Court decision, courts in this District Court have applied a three-part test: a bonus is a wage where (1) the award is non-discretionary; (2) the amount of the award is non-discretionary; and (3) the amount of the award is dependent on the employee's performance. *See Datto, Inc. v. Braband*, 856 F. Supp. 2d 354, 371 (D. Conn. 2012). Ms. Khazarian argues that, even if her bonus had been discretionary before it was issued, it became non-discretionary once it was issued. Opp. To Mot. to Dismiss 22.

Ms. Khazarian, however, must establish that her bonus was non-discretionary and that Defendants were contractually bound to (1) pay her a bonus of (2) a certain amount (3) calculated according to a performance-based formula. *See Datto, Inc.*, 856 F. Supp. 2d at 371. Even if she could show that her bonus was part of her contract, she has not alleged that the amount was fixed going forward or tied to her performance. *Compare with Wall*, 298 Conn. at 175 (employee's bonus based on established performance-based formula).

The question here is not whether Defendants must keep their promise—Ms. Khazarian may have a good argument for theft, breach of contract, or fraudulent misrepresentation, based on her allegations that Defendants promised but never delivered her a bonus. Those questions will be answered as necessary at a later point in this litigation. To establish that her bonus was a form of wages, Ms. Khazarian must establish that its payment and amount were non-discretionary and performance-based. *See Wall*, 298 Conn. at 175. Ms. Khazarian has failed to do so; the Complaint suggests that the $25,000 grant of stock was a one-time grant, and she fails to establish that the amount was determined according to an objective formula tied to her performance. Second Am. Compl. ¶ 152; *see Datto, Inc.*, 856 F. Supp. 2d at 371. As a result, Ms. Khazarian has failed to establish that her bonus was a wage.[3]

Defendants' motion to dismiss Count Fifteen is granted.

### C. Connecticut and Federal Computer Crimes (Counts Sixteen, Seventeen, Eighteen, and Nineteen).

Counts Sixteen, Seventeen, Eighteen, and Nineteen all relate to Ms. Khazarian's allegations that Defendants accessed and monitored her computer and cell phone without her authorization. Second Am. Compl. ¶¶ 90-101. Ms. Khazarian argues that Defendants monitored her "work-related and personal electronic communications, tools, computers and telephones." Opp. to Mot. to Dismiss 4 (citing Second Am. Compl. ¶ 91).

Ms. Khazarian brings Count Sixteen under the Connecticut Computer Crimes Act, Conn. Gen. Stat. §§ 52-570(b) and 53a-251 (Unauthorized access to a computer system), and Count Seventeen under Conn. Gen. Stat. §§ 53-541 and 53-542 (Computer crimes). Ms. Khazarian brings Count Eighteen under the federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and

---

[3] Although Ms. Khazarian also alleges that her colleagues were paid significantly higher bonuses than she was, this discrepancy suggests only that the payment of bonuses was discretionary.

Count Nineteen under the federal Stored Communications Act, 18 U.S.C. § 2701, *et seq*. The first three Counts each allege that Defendants intentionally accessed, without authorization, Ms. Khazarian computer and cell phone. Count Nineteen asserts that Defendants intentionally accessed, without authorization, a facility where Ms. Khazarian's electronic service provider stored information, including wire or electronic communications. Under all four claims, Ms. Khazarian alleges that the information Defendants accessed included, among other private conversations, confidential communications between Ms. Khazarian and her attorney.

Defendants consider these Counts collectively and assert that each should be dismissed because Defendants owned the devices at issue; as a result, Defendants argue that they had authorization to access the devices and the information on them. Mot. to Dismiss 9 ("It is axiomatic that a business or entity that owns an electronic device is authorized to access that device."). Defendants also argue that, on Counts Sixteen, Seventeen, Eighteen, and Nineteen, Mr. Dean and Mr. Gamez individually lacked the requisite intent to commit a computer crime, and that Mr. Gamez was acting within the scope of his employment.

At this stage of the case, at least, these claims can proceed as to all Defendants except for Mr. Gamez.

### 1. Connecticut Claims

In Connecticut, an employer may monitor an employee's communications "by any means other than direct observation, including the use of a computer, telephone, wire, radio, camera . . ." as long as the employer provides the employee with prior notice. Conn. Gen. Stat. § 31-48d(3). If the employer has reason to believe that employees are violating the law, violating the legal rights of the employer or other employees, or creating a hostile work environment, and "electronic monitoring may produce evidence of this misconduct, however, the employer may conduct monitoring without giving prior notice." *Id.* at 31-48d(a)(2).

The viability of these state law claims rests on whether Defendants monitored Ms. Khazarian's work devices or personal devices and whether, even if Defendants accessed only her work devices, she was notified. *See* Conn. Gen. Stat. § 31-48d(3). In her Opposition to the Motion to Dismiss, Ms. Khazarian states that "[i]n March, 2016, the Plaintiff worked with tech support from Yahoo, Apple, and Verizon and others and was told that her entire home network had been hacked recently – with phone calls being listened in on and her personal password-protected emails and entire home network accessed and compromised." Opp. to Mot. to Dismiss 9 (citing Second Am. Compl. ¶ 124). The Complaint itself is more vague; it alleges that Defendants conducted "electronic surveillance of her work-related and personal electronic communications," Second Am. Compl. ¶ 104, and that Defendants intercepted her personal communications, *id.* at ¶ 107.

Nevertheless, viewing the facts favorably to Ms. Khazarian, she has raised an inference that Defendants accessed her personal digital information, apart from work, thus alleging a set of facts upon which relief could be granted. Defendants' motion to dismiss as to Counts Sixteen and Seventeen therefore is denied.

### 2. Federal Claims

Count Eighteen alleges that Defendants violated 18 U.S.C. § 1030a by knowingly accessing Ms. Khazarian's computer without authorization. Second Am. Compl. ¶ 254. Defendants argue that this Count must be dismissed because Defendants had permission to access Ms. Khazarian's devices, since the devices belonged to Defendants. Mot. to Dismiss 15-16. Under *United States v. Valle*, accessing a computer "without authorization" usually refers to "a scenario where a user lacks permission to access the computer at all," and "exceeds authorized access" usually means accessing "an area of the computer to which [the user's] authorization

does not extend." 807 F.3d 508, 524 (2d Cir. 2015). This decision also discusses the origins of the Computer Fraud and Abuse Act: to address hacking and electronic trespassing. *Id.*

In Count Nineteen, Ms. Khazarian alleges that Defendants violated the Stored Communications Act, 18 U.S.C. § 2701, by intentionally accessing, without authorization, "a facility through which an electronic communication service is provided." Second Am. Compl. ¶ 262. Ms. Khazarian alleges that Defendants "obtained access to a wire or electronic communication while it was in electronic storage," and accessed "multiple privileged communications between the Plaintiff and her attorney with some of those communications containing legal strategy and analysis related to the pending dispute between Plaintiff and Defendants." Second Am. Compl. ¶¶ 265-66. Again, Defendants' defense depends on whether Defendants accessed Ms. Khazarian's personal data without authorization, Mot. to Dismiss 13, and whether Defendants did so, even though such a search was unrelated her work computer.

At this stage of the case, Ms. Khazarian has alleged facts sufficient to infer that Defendants may have accessed information unrelated to her work computer. Defendants' motion to dismiss as to Counts Eighteen and Nineteen therefore is denied.

### 3. Dismissal as to Mr. Dean and Mr. Gamez

Defendants seek dismissal of Counts Sixteen, Seventeen, Eighteen, and Nineteen as to Mr. Dean and Mr. Gamez, arguing that both acted within the scope of their employment when they accessed Ms. Khazarian's computer. Mot. to Dismiss 2; Reply to Opp. to Mot. to Dismiss 8, ECF No. 62. Defendants argue that Mr. Gamez should not face individual civil liability because he acted only at the direction of his employer. *Id.* The Court agrees.

If Mr. Gamez accessed Ms. Khazarian's computer system, he acted only in the scope of his employment. *See Mathiessen v. Vanech*, 266 Conn. 822, 839-40 (2003) (explaining that,

under the doctrine of respondeat superior, an employer is liable for employee's tortious conduct done during the course of employment); *Douglass v. Peck & Lines Co.*, 89 Conn. 622, 622 (1915) (distinguishing an employee who acts as employer's agent "under the control or direction of" an employer from employee who acts outside of authorization); *see also University Sports Pub. Co. v. Playmakers Media Co.*, 725 F. Supp. 2d 378, 285 (S.D.N.Y. 2010) (dismissing claim against computer systems administrator who downloaded information from a database where "[c]opying or downloading information may not have been within the scope of [his] typical duties," but did not exceed authorization). Therefore, as to Mr. Gamez, Defendants' Motion to Dismiss is granted.

As to Mr. Dean, on the other hand, the motion to dismiss is denied because, as CEO, Mr. Dean was a decision-maker; the Complaint sufficiently alleges that Mr. Dean exceeded his authorization to access Ms. Khazarian's computer. Therefore, her Complaint survives the motion to dismiss as to him.

### D. Invasion of privacy against Gerald Metals, Gerald Holdings, Craig F. Dean, and Dan Gamez (Count Twenty).

Ms. Khazarian alleges that Defendants "[i]ntentionally intruded upon the solitude and seclusion of the Plaintiff's private affairs and career upon a manner that would be highly offensive to a reasonable person." Second Am. Compl. ¶ 269. Defendants argue that this claim must be dismissed because "1) it fails to allege any intrusion of Plaintiff's private affairs, and 2) it does not allege that Plaintiff had a reasonable expectation of privacy with regard to the workplace or electronic devices in the workplace and/or owned by Gerald Metals." Mot. to Dismiss 16.

In Connecticut, a plaintiff may establish an invasion of privacy by showing that an "unreasonable intrusion upon the seclusion of another" has occurred. *Goodrich v. Waterbury*

*Republican-American, Inc.*, 188 Conn. 107, 127 (1982). To constitute a tort, the intrusion must be "highly offensive to a reasonable person." *Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010). In *Caro*, the Second Circuit considered whether a brother's surreptitious recording of his siblings' conversation about their mother's will would constitute an invasion of privacy. *Id.* at 96. The court explained that the interception of the conversation on the recording device constituted a tort: "[n]othing more is required after the interception is made for liability to attach based on this tort. All that is required is that the tortfeasor intended to commit the act that was the basis for the invasion – as Caro alleges here, setting up the iPhone and hitting 'record.'" *Id.* at 101.

Ms. Khazarian argues that the following allegations establish an unreasonable intrusion upon her seclusion: Defendants' surveillance of her electronic devices, including by installing software to monitor her communications, Second Am. Compl. ¶¶ 93, 101; recording her telephone calls, *id.* at ¶¶ 98, 99, 101; intercepting emails between Ms. Khazarian and her attorney, and Ms. Khazarian and her doctor, and taking screen shots of the messages, *id.* at ¶¶ 110, 125, 126; accessing her home computer and mobile phone, *id.* at ¶ 124; sending fake messages to her email account, *id.* at ¶¶ 136, 137; and obtaining photographs from her personal devices, *id.* at ¶ 149.

While some of these allegations may relate to work activities or electronic devices provided by her employer, some of these allegations relate to personal activities, outside of work. At this stage of the case, these allegations support Ms. Khazarian's claim that Defendants unreasonably intruded upon her seclusion in a way that a reasonable person would find highly offensive. *See Goodrich*, 188 Conn. at 127; *Brown-Criscuolo v. Wolfe*, 601 F. Supp. 2d 441, 450

(D. Conn 2009) (finding that school superintendent who read teacher's email while teacher was on leave had invaded privacy). Defendants' motion to dismiss Count Twenty therefore is denied.

### E. Defamation per se against Craig F. Dean, Gerald Metals, and Gerald Holdings (Count Twenty-One).

Finally, Ms. Khazarian alleges that Defendants defamed her by stating in her termination letter that she had behaved in a way that "compromise[d her] professional integrity as a lawyer." Second Am. Compl. ¶ 272. Ms. Khazarian alleges that Defendants' statement is untrue and that it "accused the Plaintiff of improper conduct and integrity in her profession." *Id.* at ¶¶ 272-74.

Defendants argue that Count Twenty-One must be dismissed because (1) the letter states an opinion of Ms. Khazarian's work performance, not a defamatory statement, and (2) because the Complaint fails to allege publication. Mot. to Dismiss 19. Ms. Khazarian responds that the Complaint sufficiently alleged that Defendants had made a defamatory statement, but concedes that she did not plead the element of publication and requests leave to replead that element. Opp. to Mot. to Dismiss 50.

Connecticut law requires that the plaintiff establish the following elements for a prima facie claim of defamation per se: "(1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement." *Cweklinsky v. Mobil Chem. Co.*, 267 Conn. 210, 217 (2004). "'[W]riting which tends to disparage a person in the way of his office, profession or trade' is defamatory per se and does not require proof of special damages." *Capuano v. Island Computer Products, Inc.*, 382 F. Supp. 2d 326, 343 (D. Conn. 2005) (quoting *Davis v. Ross*, 754 F. 2d 80, 82 (2d Cir. 1985)). Typically, "no action for defamation exists if the defendant publishes the defamatory statements to only the plaintiff, and the plaintiff subsequently disseminates the statements to a third person."

*Cweklinsky*, 267 Conn. at 217; *see also Capuno*, 382 F. Supp. 2d at 343 (finding defamation claim failed where plaintiff identified no "evidence in the record that defendants published defamatory statements").

Ms. Khazarian has not alleged that Defendants published the letter to a third party, an essential element of a defamation per se claim. The Complaint states that Defendants wrote a defamatory letter that identified Ms. Khazarian and disparaged her professional reputation, but it fails to allege that Defendants published the letter to a third party. *See* Opp. to Mot. to Dismiss 52 ("The Plaintiff admittedly did not identify the individuals to whom the termination letter was provided."). Defendants' motion to dismiss Count Twenty-One therefore is granted. The Court, however, grants Ms. Khazarian leave to address this dismissed Count.

## IV. CONCLUSION

For all of the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**. Defendants' Motion to Dismiss is **GRANTED** as to Counts Fifteen and Twenty-One, and **DENIED** as to Counts Twelve, Sixteen, Seventeen, Eighteen, Nineteen, and Twenty. In addition, the Motion to Dismiss Counts Sixteen, Seventeen, Eighteen, and Nineteen as to Dan Gamez in his individual capacity is **GRANTED**. Plaintiff may serve an Amended Complaint within fourteen days of this order, to the extent that Plaintiff wishes to address the dismissed claims.


SO ORDERED at Bridgeport, Connecticut, this 9th day of November 2017.

/s/ Victor A. Bolden
Victor A. Bolden
United States District Judge